Tracy L. LARMAN, Trustee of the Kluver Family Trust, Appellee,

v.

STATE of Iowa, Appellant,

and

Blackhawk Development, Inc. and Sac County, Iowa, Appellees,

and

Terry L. Mickle, Urban J. Janning, Virginia H. Janning, and the unknown claimants of the following described real estate situated in Sac County, Iowa, to wit: Southeast Quarter of the Northwest Quarter (SE¼ NW¼), and Government Lot Two (2), all in Section Two (2), Township Eighty-six (86) North, Range Thirty-six (36) West of the 5th P.M., Sac County, Iowa, Defendants.

STATE of Iowa, Appellant,

v.

SAC COUNTY, Iowa, Appellee.

No. 94–1925.

Supreme Court of Iowa.

July 24, 1996.

Thomas J. Miller, Attorney General, and Michael H. Smith, Assistant Attorney General, for appellant.

Margaret C. Callahan of Belin Harris Lamson McCormick, P.C., Des Moines, and Colin McCullough of McCullough Law Firm, Sac City, for appellee Blackhawk Development, Inc.

Frank J. Comito of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellee Sac County.

No appearance for appellee Larman.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Appellee, Kluver Family Trust, brought this quiet title action to establish its title to real estate adjoining Black Hawk Lake. This property was purchased on contract from the Trust by appellee, Blackhawk Development, Inc. The land was also subject to a roadway easement owned by appellee, Sac County. Appellant, the State of Iowa, claimed an interest in the property on behalf of the public because that portion of the property adjoining the lake was used by the public for lake access and recreational activities. The State sought a declaratory judgment that it had jurisdiction of the public's interest in the land pursuant to the public trust doctrine and under Iowa Code section 461A.11 (1993). The district court denied the

State's claims and the State appeals. We affirm.

## I. *Background Facts.*

The Kluver Family Trust owns a seventy-acre farm adjacent to Black Hawk Lake. Black Hawk Lake is a natural, meandered lake in Sac County. It has 42,080 feet of shoreline; thirty-six percent to forty-two percent is open to the public. Sac County Road M–54 runs very close to the southeast shoreline of the lake for a distance of approximately 1300 feet over the Kluver property.

In 1968, Albert Kluver, the prior owner of the land, gave Sac County an easement for road purposes. The road had been located here, however, since at least 1885. The public has used the road in this area for access to the lake front: people fish, bird-watch, walk and enjoy an unobstructed view of the lake. The road is so close to the lake that some people fish from their cars. A survey done at the request of the State revealed the roadway easement intersects with the high-water mark in some areas. Where the road does not intersect with the high-water mark, only one to three feet separate the shoreline and the easement.[1]

In the early 1990s local citizens became interested in dredging the east part of the lake. The legislature appropriated funds for this project "contingent upon land being used as a spoil site for the lake being provided without financial obligation to the State and the active participation of a local entity in preparing the site." 1992 Iowa Acts ch. 1001, § 402. A local citizens group formed Blackhawk Development, Inc. to fulfill this legislative requirement.

Blackhawk contracted to buy the Kluver property for the spoil site. As a result of this transaction, the parties discovered Terry Mickle, Urban Janning and Virginia Janning claimed title to two small parcels of lake frontage located on the Kluver land.

In addition to using the Kluver property as a spoil site, Blackhawk originally intended to develop residential lots along the road on the side away from the lake. A county supervisor and the county engineer had concerns, however, about providing adequate drainage for these lots. The supervisor came up with the idea of moving the existing highway, leaving enough space between the lake and the new road for private homes. The county board of supervisors approved a resolution relocating the highway, in part because relocating the road would increase property tax revenues. The estimated value of lots across the road from the lake was $300 per front foot, whereas the estimated value of lots located between a new road and the lake was $500 per front foot.

After the public protested the Board's decision, the Board adopted an amended resolution. The amendment required Blackhawk to make lot sales subject to a restrictive covenant providing for a sidewalk adjacent to the lake for public use and access.

The Department of Natural Resources (DNR) first learned of the plan to relocate M–54 when concerned citizens contacted the agency to complain of the County's action. Although the State initially considered the road relocation dispute to be a local issue, it subsequently contacted the Board in an unsuccessful attempt to meet with the Board to discuss the public's concerns.

## II. *Procedural History.*

The present action was initiated by the Trust to quiet title to the real estate purchased on contract by Blackhawk. The Trust named Mickle and the Jannings as defendants due to their claims of ownership in a small area of lake frontage. These claims were resolved by the trial court and are not before us on appeal.

Blackhawk, Sac County and the State were also named as defendants in the quiet title action. In its answer, the State requested that the Trust's title "should be quieted subject to the rights of the State of Iowa and the public." The State also filed a cross-claim against Sac County seeking to enjoin the County's relocation of the highway or, alter-

---

1. No one disputes the State owns the lake bed up to the high-water mark. *See Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 299 (Iowa 1994); *State v. Sorensen,* 436 N.W.2d 358, 361 (Iowa 1989).

natively, vest jurisdiction of the abandoned roadway in the State. The trial court, in a thorough and well-reasoned decision, denied relief to the State.

The State appealed. On appeal, the State does not seek to compel the County to maintain the existing roadway. Rather, the State claims that if the County relocates the road, the State, acting through the DNR, has the authority to protect and maintain the existing public access to the lakeshore without acquiring additional property rights through condemnation or otherwise. The State relies on the public trust doctrine and Iowa Code section 461A.11 as the source of this authority.

### III. *Standard and Scope of Review.*

 An action to quiet title is an equitable action and our review is de novo. *Rouse v. Union Township,* 530 N.W.2d 714, 716 (Iowa 1995). The State's claim for declaratory relief was also tried in equity. Therefore, our review of the trial court's decision on that claim is de novo. *DeCoster v. Franklin County,* 497 N.W.2d 849, 851 (Iowa 1993) (declaratory judgment tried in equity is reviewable de novo).

### IV. *Public Trust Doctrine.*

 The public trust doctrine is "based on the notion that the public possesses inviolable rights to certain natural resources." *State v. Sorensen,* 436 N.W.2d 358, 361 (Iowa 1989). The doctrine limits the State's power to dispose of land encompassed within the public trust. *See id.* at 362 (citing *State v. Dakota County, Nebraska,* 250 Iowa 318, 93 N.W.2d 595 (1958)). The State relies on the doctrine here to argue that the public's right of access to Black Hawk Lake in the area of County Road M–54 cannot be lost simply by the County's abandonment of its lakeside roadway easement.

 The public trust doctrine originally applied to the beds of navigable waters, but has now expanded to embrace the public's use of lakes and rivers for recreational purposes as well. *Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 299 (Iowa 1994); *Sorensen,* 436 N.W.2d at 363. As a consequence, the public's right of access to public waters is part of the public trust. *Sorensen,* 436 N.W.2d at 363 (public's use of waterways, and therefore a means of public access, is protected); *see Schaller v. State,* 537 N.W.2d 738, 743 (Iowa 1995) (suggesting public's right of access to lake is protected). Nevertheless, access is protected only to the extent the land providing such access is owned by the State. *Sorensen,* 436 N.W.2d at 363 (the doctrine applies to natural resources within the state and to "state-owned land" adjoining these resources). Thus, to invoke the doctrine, the State must at least show an ownership interest in the land.[2] *Id.*

The State argues here the public has acquired a prescriptive easement to use the land for recreational purposes and this prescriptive easement is protected as an existing public right under the public trust doctrine.[3] Thus, we now consider whether the State proved it had a prescriptive easement to use the Trust's land adjoining Black Hawk Lake for public access to the lake.

### V. *Prescriptive Easement.*

 Under Iowa law, a prescriptive easement is "created by adverse possession, under claim of right or color of title, openly, notoriously, continuously, and hostilely asserted against [the true owners] for ten years or more." *Schwenker v. Sagers,* 230 N.W.2d 525, 527 (Iowa 1975). An express easement for a limited use may be expanded by prescription. *Id.* Permissive use may ripen into a prescriptive easement, however, "only [where] the party claiming the easement has expended substantial amounts of labor or money in reliance upon the servient owner's consent or his oral agreement to the use." *Simonsen v. Todd,* 261 Iowa 485, 489, 154 N.W.2d 730, 733 (1967).

---

2. The appellees do not contend the public trust doctrine does not protect an easement interest in land, as opposed to ownership in fee.

3. The State does not rely on the 1968 roadway easement to provide the necessary ownership interest. It acknowledged at oral argument that the right of way granted in the easement does not include the right of lake access or recreational use. In fact, this easement is expressly limited to "road purposes and for use as a Public Highway."

Before we discuss whether the State has proved it had a prescriptive easement, it is important to recognize that special rules apply when the principles of adverse possession are used to establish an easement in real estate. When one seeks to prove a prescriptive easement, Iowa Code section 564.1 requires proof of adverse possession apart from the claimant's use of the property:

> In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as the party's right, *but the fact of adverse possession shall be established by evidence distinct from and independent of its use,* and that the party against whom the claim is made had *express notice* thereof; and these provisions shall apply to public as well as private claims.

Iowa Code § 564.1 (1993) (emphasis added). As provided in section 564.1, the owner must have "express notice" of any claim of adverse possession of an easement in real estate. *Id.* These requirements ensure the landowner knows another's use of the property is claimed as a right hostile to the landowner's interest in the land. Otherwise, the landowner may incorrectly assume the other's use results merely from the landowner's willingness to accommodate the other's desire or need to use the land. We conclude, as did the district court, that the State has failed to establish a prescriptive easement of public access under these principles.

■ A. *Claim of right or color of title.* The State proved the public used the Trust's land for access to the lake and for other recreational purposes for more than ten years. Pursuant to section 564.1, however, this use does not prove the State "claimed the easement as the [State's] right."

The record also shows the Trust's predecessors in title knew of the public's use of the property. This evidence is also insufficient because, again, it is not independent of the State's use of the land. *Compare Hicks v. Franklin County,* 514 N.W.2d 431, 441 (Iowa 1994) (holding county engineer's knowledge of landowners' use of land subject to county's easement was not evidence independent of landowners' use so as to satisfy section 564.1) *with Schwenker,* 230 N.W.2d at 528 (prescriptive easement established by adverse possession where party claiming easement informed landowner's attorney he "had a right to the use of the [land]").

The State argues that in addition to the public's use of the property, the County improved and maintained its right of way in a manner that facilitated public recreational access to the lake. The record, however, does not establish that any action of the County in improving and maintaining the roadway was any different from the County's use of its other secondary roadway easements. The County did not keep the shoreline clear of trees or vegetation, and neither the County nor the State built docks or other facilities to aid access to the lake. The County's mere permissive use of the land consistent with its express roadway easement cannot be the basis for finding a prescriptive easement for public access to the lake. *See Schaller,* 537 N.W.2d at 742 ("To constitute prescriptive use, the use must be without legal authority."); *Simonsen,* 261 Iowa at 489, 154 N.W.2d at 733 (permissive use supports a prescriptive easement only where the claimant has expended substantial amounts of labor or money in reliance upon the owner's consent or oral agreement to the claimant's use).

■ B. *Express notice.* We also conclude the State has failed to prove the Trust or any other prior owner of the land in question had "express notice" of the State's claim. In *State v. Mitchell,* 58 Iowa 567, 569, 12 N.W. 598, 599 (1882), our court interpreted Iowa Code section 2031, now section 564.1. We held the statute requires express notice not only of the public *use* of the property but also of the public's *claim* to the easement, independent of its use. Although the State has proved here the owner of the land knew of the public's *use* of the land for lake access and recreational purposes, the State has not proved the owner had "express notice" of the State's *claim* as required by section 564.1.

In summary, the State has failed to prove adverse possession by evidence other than

use and has failed to prove the landowner had express notice the State was claiming an easement for access to the lake. For these reasons, the State did not prove a prescriptive easement for recreational use by adverse possession.

## VI. *Iowa Code Section 461A.11.*

 Iowa Code section 461A.11 gives the State jurisdiction over public lands under certain circumstances:

> Any land adjacent to a meandered lake ... *which has been conveyed by gift, dedication or other means to the public,* but has not been conveyed to the jurisdiction of a specific state agency or political subdivision, shall be subject to the jurisdiction of the [natural resource] commission....

Iowa Code § 461A.11 (1993) (emphasis added). This statute does not *create* ownership rights in the public, but merely provides for jurisdiction by the natural resource commission when property owned by the public has not been conveyed to a specific governmental body. Thus, the State's claim under section 461A.11 depends on its ability to prove the public's right to lake access over the Trust's property.

The State again relies on a prescriptive easement as the property "conveyed ... to the public" within the meaning of section 461A.11. We have already decided the State was unsuccessful in proving a prescriptive easement. Therefore, there is no "land ... conveyed ... to the public" over which the State may exercise jurisdiction under section 461A.11.

## VII. *Summary.*

The State has failed to prove the public has a property right to continued access to Black Hawk Lake over the property purchased by Blackhawk Development, Inc. The State did not establish a prescriptive easement by adverse possession in accordance with the requirements of Iowa Code section 564.1. Consequently, there is no public ownership interest in the land protected by the public trust doctrine. Similarly, there is no interest in this land owned by the public over which the State may exercise jurisdiction under section 461A.11. There-

fore, the trial court was correct in quieting title to the property without making that title subject to any right of the State. The trial court also correctly ruled the State was not entitled to a declaratory judgment that it had authority to protect and maintain the existing public access to the lakeshore without acquiring additional property rights through condemnation or otherwise.

**AFFIRMED.**